UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FRANCIS A. ROTH,                    )
                                    )  No. CV-06-0067-CI
            Plaintiff,              )
                                    )  ORDER GRANTING DEFENDANT'S
v.                                  )  MOTION FOR SUMMARY JUDGMENT
                                    )
LINDA S. MCMAHON, Commissioner      )
of Social Security,[1]              )
                                    )
                                    )
            Defendant.              )
                                    )

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 12) and Defendant's Motion for Summary Judgment (Ct. Rec. 16), noted for hearing without oral argument on October 16, 2006. (Ct. Rec. 9.)   Attorney Lora Lee Stover represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf  represents the Commissioner of Social Security ("Commissioner").   The parties have consented to proceed before a magistrate judge. (Ct. Rec. 18.)

_____

[1] As of January 20, 2007, Linda S. McMahon succeeded Defendant Commissioner Jo Anne B. Barnhart as Acting Commissioner of Social Security.   Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Linda S. McMahon should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405 (g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 1

After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16), and **DENIES** Plaintiff's Motion for Summary Judgment. (Ct. Rec. 12.)

### JURISDICTION

Plaintiff applied for Disability Insurance Benefits ("DIB") on May 12, 2003.  (Tr. 92-95.) He alleged disability due to crushed disks, arthritis and fusions, with an alleged onset date of November 15, 1996.  (Tr. 92-95.)  The application was denied initially (Tr. 61) and on reconsideration.  (Tr. 67-68.)  Plaintiff appeared before ALJ James A. Burke on May 11, 2005. The ALJ heard the testimony of Plaintiff and vocational expert Tom Moreland. (Tr. 36-58.) The ALJ issued a decision on June 30, 2005, finding that Plaintiff was not disabled. (Tr. 18-32.)  The Appeals Council denied a request for review on January 25, 2006.  (Tr. 6-8).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) March 1, 2006. (Ct. Rec. 1.)

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 52 years old on the date of the ALJ's decision. (Tr. 18.)  He has a high-school education and has worked as an auto/heavy equipment mechanic, auto body repairman, and painter. (Tr. 18.)  Plaintiff alleges disability since November 15, 1996, due to crushed disks, arthritis and fusions. (Tr. 18.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments

acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

# STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 5

F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at the onset that Plaintiff meets the disability requirements set forth in Section 216(I) of the Social Security Act and was insured for disability benefits through September 30, 1998. (Tr. 19.)  The claimant was therefore required to establish disability prior to this date. (Tr. 19.) The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 19.)  At step two, the ALJ found that the medical evidence established that during the relevant time frame, Plaintiff suffered from chronic neck pain (status post C5-6, C6-7 anterior diskectomy and fusion disk bulge), an impairment considered severe but not severe enough to meet or medically equal one of the Listings impairments.  (Tr. 27.) The ALJ concluded the record did not establish that Plaintiff suffered from a severe mental impairment, carpal tunnel syndrome which had more than a minimal impact on the ability to do work-related activities, disabling right ankle, knee or foot pain, or tinnitus that would limit Plaintiff's ability to work. (Tr. 20-21, 26-27.)  The ALJ

found Plaintiff's testimony regarding his limitations not fully
credible (Tr. 29), and concluded that Plaintiff has the RFC to
perform a wide range of work of light work. (Tr. 27.)  At step four
the ALJ concluded that Plaintiff is unable to perform his past work.
(Tr. 29.)  It is the Commissioner's burden at step five to show that
there are jobs existing in significant numbers in the national
economy which Plaintiff can perform, consistent with his medically
determinable impairments, functional limitations, age and education.
At step five, in response to the ALJ's hypothetical question, the
vocational expert testified that a person having the hypothesized
conditions could perform such jobs as a cashier II, laundry worker,
agricultural produce sorter, and poultry worker, and that a
significant number of these jobs existed in the state and national
economy.  Accordingly, the ALJ determined at step five of the
sequential evaluation process that Plaintiff was not disabled within
the meaning of the Social Security Act. (Tr. 30-31.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of
law, and assigns six errors; the court addresses four.[2]

---

[2] Plaintiff first assigns error to the ALJ's failure to request
the assistance of an orthopedist as a medical expert.  (Ct. Rec. 13
at 7.)  This contention is not supported by argument or citation to
authority elsewhere in the Memorandum; the court deems it waived.
Similarly, Plaintiff's second assigned error is the ALJ's failure to
utilize a psychologist as a medical expert.  (Ct. Rec. 13 at 7.)
This contention also does not appear in the Memorandum, but is
listed as an issue.  For the same reason, this issue is also deemed

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

Specifically, he argues that the ALJ erred when he (1) found that Plaintiff does not suffer from a severe mental impairment; (2) weighed the opinion of his treating physician; (3) assessed Plaintiff's RFC, and (4) asked the vocational expert an incomplete hypothetical.[3] (Ct. Rec. 13 at 7-12.)

The Commissioner opposes the Plaintiff's motion and asks that the ALJ's decision be affirmed. (Ct. Rec. 17 at 6-17.)

**DISCUSSION**

**A.    Severe Impairment**

Plaintiff contends that the ALJ erred by finding that his mental impairment was not severe. (Ct. Rec. 13 at 9-11.) Specifically, Plaintiff argues that the ALJ should have considered an ER doctor's September 1997 assessment of his depression because it predated his date of last insured and assessed a GAF of 30, indicating a serious impairment in communication or functioning or

---

waived.  Plaintiff's fourth assigned error is the ALJ's failure to consider his pain complaints in light of assessed mental impairments.  This issue is resolved by the ALJ's finding at step 2 that Plaintiff's mental impairment is not "severe" as defined by the regulations.

[3]Plaintiff fails to list the incomplete hypothetical as an assignment of error (Ct. Rec. 13 at 7), but argues with citation to authority that the hypothetical failed to include all of his limitations.  (Ct. Rec. 13 at 11-12.)  The court considers this argument.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 8

1  an inability to function in almost all areas.[4] (Ct. Rec. 13 at 9.)

2  The Commissioner responds that the ALJ correctly found that

3  Plaintiff's depression did not result in any significant work-

4  related limitations "because it was situational in nature and did

5  not persist for twelve months." (Ct. Rec. 17 at 8.)

6       An impairment or combination of impairments is not severe if it

7  does not significantly limit one's physical or mental ability to do

8  basic work activities.  See 20 C.F.R. §§ 404.1521; 416.920(c). In

9  other words, an impairment is severe if it has more than a minimal

10  effect on an individual's ability to do basic work activities.

11  *Smolen v. Chater*, 80 F. 3d 1272, 1290 (9th Cir. 1996).  To be

12  considered "severe," limitations also must meet the Act's

13  requirement that they last for 12 consecutive months. 42 U.S.C. §

14  1382c(a)(3)(A).  The ALJ found that the record did not contain

15  sufficient evidence that Plaintiff suffered from a mental impairment

16  for a continuous twelve-month period between the date of onset

17  (November 15, 1996) and his date last insured (September 30, 1998).

18  (Tr. 26.)

19       Substantial evidence supports the ALJ's conclusion that

20  Plaintiff's depression was not severe, as defined by the

21  regulations.  The ALJ notes when Plaintiff's treating orthopedist,

22  Dr. Anderson, observed in September of 1997 that he was severely

23  depressed and had suicidal ideation, he directed Plaintiff to seek

24  treatment immediately. (Tr. 26.) Plaintiff was taken to the hospital

25  from Dr. Anderson's office for a psychiatric evaluation.  At the

26

27       [4] DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed. (DSM-IV),

28  at 32 (1995).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

time Plaintiff was homeless and suffering financial problems; he had taken Prozac for one month. (Tr. 26.) At the hospital Plaintiff was diagnosed with major depression, possibly a somatization disorder, and referred for outpatient mental health treatment and medication support. (Tr. 21, 26.) The ALJ notes that the record shows no further psychological or psychiatric treatment during the relevant time frame. (Tr. 21, 26.) Plaintiff's mental state is not again discussed in the record until he was evaluated for vocational rehabilitation in 2002 by Drs. Bostwick and Bot, four years after the date last insured, and found to be a good candidate. (Tr. 26.) And, the ALJ observed, neither of these physicians diagnosed depression. (Tr. 26.) The ALJ concluded that Plaintiff suffered from depression, but it was situational in nature and did not persist for twelve consecutive months during the period at issue, from November of 1996 to September of 1998. (Tr. 26.)

A careful review of the record reveals substantial evidence supports the ALJ's finding at step two.  Other than Plaintiff's hospital evaluation, there is no evidence of any mental impairment or mental health treatment in the record during the relevant period. Plaintiff fails to meet his burden of establishing that his depression was a severe impairment within the meaning of the regulations during the relevant time period. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (holding that, if the evidence reasonably supports a social security decision, the court must uphold the decision and may not substitute its judgment for the agency's).

**B.  Weighing Medical Evidence**

In social security proceedings, the claimant must prove the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject and opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1453, 1463 (9th Cir. 1995).

Plaintiff contends that the ALJ erred by rejecting the opinions of his treating physician, Sharon Loomis, M.D. (Ct. Rec. 13 at 10-11.) The Commissioner responds that the ALJ properly weighed the medical evidence and credited some of Dr. Loomis' opinions. (Ct. Rec. 17 at 10-11.)

Sharon Loomis, M.D., saw Plaintiff in the spring of 1996 when he complained of ongoing problems with neck pain and asked to have his Labor and Industries claim reopened. (Tr. 199.) (The claim dated to a lifting injury in 1990 which was closed in 1993. (Tr. 199; 240.)) After the claim was closed, Plaintiff worked full-time

repairing and painting motor vehicles. (Tr. 199.) Dr. Loomis notes that Plaintiff was involved in a motor vehicle accident on September 25, 1996. Following the accident, she saw him for an evaluation in October of 1996. Plaintiff expressed considerable complaints of neck pain, left upper back pain, numbness and tingling in both hands, and heaviness in both arms. (Tr. 199.) Plaintiff reported that he was having a lot of difficulty continuing his work at the same level as before the accident. (Tr. 199.) Dr. Loomis referred Plaintiff for a cervical MRI; it revealed prominent disc protrusion at C6-7 which caused moderate cervical spinal canal stenosis at that level. (Tr. 199.) The MRI also revealed a significant bulge at C5-6 with bilateral foraminal stenosis in a small left disc component. At C6-7, Plaintiff had significant foraminal stenosis as well. (Tr. 199.) Plaintiff told Dr. Loomis that since the accident he was having problems with fine motor control, including dropping objects. (Tr. 199.) Plaintiff stopped working on November 15, 1996. (Tr. 201.) Dr. Loomis noted Plaintiff's relatively normal neurologic exam. She referred him for a hand capacity evaluation. (Tr. 200.) Following this evaluation, she observes that he was assessed as unable to lift more than 15 pounds frequently, and could not use his hands repetitively. (Tr. 200.) The restriction on using his hands repetitively meant that Plaintiff was unable to return to his work as a mechanic. (Tr. 200.) On July 14, 1997, Dr. Loomis summarized Plaintiff's impairments as "significant cervical spondylosis with moderate cervical central canal narrowing causing some impingement of his spinal cord." (Tr. 200.) On June 18, 1990, (more than a year after Plaintiff's date of last insured), Dr. Loomis stated that Plaintiff was unable to work but would benefit from vocational

services when his condition became fixed or treatment concluded.
(Tr. 201.) Two years after Plaintiff's date of last insured, on
October 3, 1990, Dr. Loomis opined that treatment was likely to
restore Plaintiff's ability to work. "I think he'll do very well
with treatment." (Tr. 205.) She assessed cervical spondylosis
(marked), bilateral shoulder impingement (moderate), and carpel
tunnel syndrome ("CTS") (moderate). (Tr. 204.)

In assessing Dr. Loomis' opinions, the ALJ first notes that his
RFC is generally consistent with the limitations she assessed in
1997, in that they both opined Plaintiff could frequently lift or
carry 15 pounds, had some restrictions related to the repetitive use
of his hands, and cannot perform his past relevant work. (Tr. 27,
citing Tr. 200.) The ALJ observes that although Dr. Loomis opined
in June of 1998 that Plaintiff was unable to work, she also
indicated that once his condition became fixed and stable, he could
participate in vocational training. (Tr. 28.) The ALJ found that
even though Dr. Loomis is a treating physician, her examinations
have been cursory and infrequent: in December of 1996, Dr. Loomis
stated that Plaintiff's reflexes were fully intact and muscle
strength was grossly intact. (Tr. 28.) The only other report
following an examination was a form used to determine eligibility
for public assistance, covering October of 1997 to 1999. (Tr. 28.)
Thus, between November of 1996 and 1999, Dr. Loomis reported two
examinations of the Plaintiff. (Tr. 28.) The ALJ observed that in
April of 2000, Plaintiff's treating orthopedist, John Oakley, M.D.,
did not opine that he had work-related limitations; rather, Dr.
Oakley felt that efforts should be made to try to rehabilitate
Plaintiff to return to some type of gainful employment. (Tr. 28;

224.)    In the context of weighing Dr. Loomis's opinion, the ALJ found Plaintiff less than completely credible. (Tr. 29.) Because much of Dr. Loomis' information was based on Plaintiff's unreliable self reporting, the ALJ found that her opinions were entitled to less weight. (Tr. 28.)

With respect to Dr. Loomis' diagnosis of CTS, the ALJ notes that Plaintiff was diagnosed with mild carpal tunnel syndrome between 1989 and 1992, but the record does not contain an EMG or document any treatment for this condition during the applicable time frame. (Tr. 26, citing Tr. 163-174.) The ALJ outlined the evidence pertaining to CTS: (1) mild CTS is diagnosed in December of 1996; (2) a 2001 independent medical exam (IME) refers to an EMG in October of 1997 confirming the diagnosis of mild right CTS; but there is no evidence in the record of this EMG; and (4) Plaintiff received no treatment for CTS. (Tr. 26, citing 242.) The ALJ also observed that Larry Lamb, M.D., performed conduction studies in October of 1999 (about one year after the date of last insured) and found that Plaintiff's history of carpel tunnel had, for the most part, normalized. (Tr. 212.)    Doctors who performed an IME nine years after the date of last insured found no evidence of carpel tunnel syndrome. (Tr. 172.)    The ALJ concluded that, prior to Plaintiff's date of last insured, he had mild CTS; "however, there was no objective evidence to support this." (Tr. 27.) The ALJ concluded that during the relevant time frame, Plaintiff's mild carpel tunnel syndrome did not impose more than a minimal limitation on his ability to do work-related activities. (Tr. 27.) With respect to Plaintiff's complaints of right knee and foot pain, the ALJ observed that there was no medical diagnosis until about three years

after his insured status expired. (Tr. 27.) Similarly, the ALJ did not include a right knee impairment because the problem was diagnosed, treated and resolved by May of 1992, several years before the onset date. (Tr. 26.) The ALJ notes that Dr. Parker tested Plaintiff following his 1996 complaint of tinnitus. (Tr. 20-21, citing Tr. 186.) Audiologic testing showed moderate to severe high frequency sensorineural hearing loss bilaterally; however, Plaintiff's acoustic reflexes were normal, as was his ability to discriminate speech. Dr. Parker discussed tinnitus management strategies with Plaintiff. (Tr. 21, citing Tr. 186.) The ALJ appropriately did not include it as a severe impairment.

To the extent that Dr. Loomis' opinions were not consistently supported by diagnostic testing, laboratory reports or clinical findings, the ALJ gave them less weight. (Tr. 28.)

Plaintiff asserts that the ALJ ignored the medical opinions given by the Plaintiff's treating physician. (Ct. Rec. 13 at 10.) Rather than "ignoring" Dr. Loomis' opinions, the ALJ carefully considered and adopted those which were supported by other evidence in the record. As outlined herein, when the ALJ discounted portions of Dr. Loomis' opinions, such as her belief that Plaintiff could not work in June of 1990, he gave specific and legitimate reasons for doing so, including her very infrequent contact with Plaintiff, and the lack of medical records pertaining to the relevant time frame. The ALJ's weighing of the medical evidence is supported by the record and free of legal error.

**C.   Residual Functional Capacity (RFC)**

Plaintiff also disputes the ALJ's determination that he retains the residual functional capacity to perform a wide range of

light work. (Ct. Rec. 13 at 9-11.) The Commissioner responds that the ALJ's determination is supported by the medical evidence and by his credibility assessment. (Ct. Rec. 17 at 12-16.)

When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). "[T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. . . . [T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (citations and internal quotation marks omitted).

Plaintiff's argument with respect to the RFC is the same as his second argument: he disagrees with the ALJ's weighing of the medical testimony.

Plaintiff challenges the determination that he lacked credibility. He contends that this finding "is not based on any convincing evidence." (Ct. Rec. 13 at 11.) Credibility determinations do bear on the evaluation of medical evidence when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is

unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).   Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).   "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Factors the ALJ may properly consider include the claimant's reputation for truthfulness, prior inconsistent statements, unexplained failure to seek medical care or to follow a prescribed course of treatment, and the claimant's activities of daily living. See *Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002).

There is evidence of malingering in the record. An IME in 2001 notes that Plaintiff "consistently throughout the exam grimaces, grunts, groans, and shows other manifestations of pain magnification. (Tr. 246.) The orthopedist found no specific evidence of objective abnormality on clinical exam, but found significant evidence of marked symptom embellishment and pain magnification behavior. (Tr. 248.)  Allen Bostwick, Ph.D., examined Plaintiff on September 25, 2002, and opined after testing: "his Validity Scale profile reflects frank malingering of psychopathology." (Tr. 280.)

The ALJ found a minimum of four reasons to doubt Plaintiff's credibility: (1) Plaintiff alleged disabling impairments, but no treating or examining doctor, except Dr. Loomis, opined that he was unable to work during the period at issue, and even she felt that Plaintiff would respond well to treatment and be able to work after vocational training; she did not opine that Plaintiff was

permanently disabled. (Tr. 29, 201, 205.) (2) The record is void of any reported limitations by the claimant during the period at issue. (Tr. 29.) (3) Plaintiff's neurological exams have all been essentially within normal limits. (Tr. 29.) (4) Several examining physicians observed that Plaintiff embellishes his symptoms, exaggerates and is malingering; Plaintiff's self-reports are therefore not fully reliable due to his tendency to exaggerate his difficulties. (Tr. 29, 246, 274, 280.)

When the ALJ weighed Dr. Loomis' opinion, he properly considered that some of her assessment was based in part on Plaintiff's unreliable self-reporting. (Tr. 28.) The court finds that the ALJ appropriately considered the medical evidence, as well as Plaintiff's credibility, in determining his residual functional capacity assessment. With respect to the ALJ's residual functional capacity assessment, the ALJ's reasons for finding Plaintiff capable of a wide range of light work are fully supported by the medical evidence (including examining and consulting physicians' findings), objective test results, and by his credibility determination. The ALJ's assessed RFC is supported by the record and free of legal error.

**D.  Vocational Expert**

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was flawed because it did not include all of his medically supported limitations. (Ct. Rec. 13 at 10-12.) The Commissioner responds that the ALJ included all of the impairments established by the medical evidence. (Ct. Rec. 20 at 5-7.)

Plaintiff's argument is the same, that the ALJ did not weigh the medical evidence, particularly with respect to his mental

impairment, in the way he wished. For the reasons articulated herein, the court finds that the ALJ's hypothetical included all of the limitations established by the competent medical and other evidence during the relevant time frame.

**IT IS ORDERED:**

1.    The Defendant's Motion for Summary Motion (**Ct. Rec. 16**) is **GRANTED**.

2.    The Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED.**

3.    The Clerk of the Court is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.   Judgment shall be entered for Defendant, and the file shall be closed.

DATED January 30, 2007.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 19